**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| DENNIS LEWIS, | : | Civil No. 05-5832 (FLW) |
|  | : |  |
| Petitioner, | : |  |
|  | : |  |
| v. | : | **O P I N I O N** |
|  | : |  |
| ALFARO ORTIZ, et al., | : |  |
|  | : |  |
| Respondents. | : |  |

**APPEARANCES:**

> DENNIS LEWIS, #37343B
> East Jersey State Prison
> Lock Bag R
> Rahway, New Jersey  07065
> Petitioner pro se

> PATRICIA B. QUELCH, ASSISTANT PROSECUTOR
> MONMOUTH COUNTY PROSECUTOR
> Court House
> Freehold, New Jersey  07728-1789
> Attorneys for Respondents

**WOLFSON**, District Judge

Dennis Lewis filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254(a) challenging a conviction in the Superior Court of New Jersey.  Petitioner also filed a Brief.  Respondents filed an Answer, arguing that the Petition should be dismissed as time barred and on the merits, and Petitioner filed a Traverse.  For the reasons expressed below, the Court will order an evidentiary hearing on Ground One because it was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, see 28

U.S.C. § 2254(d)(2), appoint the Federal Public Defender to represent Petitioner, see 28 U.S.C. §

2254 Rule 8(c), and dismiss Grounds Two through Seven because the state courts' adjudication

of these claims was not contrary to, or an unreasonable application of, clearly established

Supreme Court precedent, see 28  U.S.C. § 2254(d)(1).

## I.  BACKGROUND

Petitioner challenges a judgment of conviction filed on September 4, 1996, in the

Superior Court of New Jersey, Law Division, Monmouth County, after a jury convicted him of

first-degree armed robbery, third-degree possession of a weapon for an unlawful purpose, and

fourth-degree unlawful possession of a weapon.  The Law Division granted the state's motion for

an extended term as a persistent offender under N.J. STAT. ANN. § 2C:44-3, and sentenced

Petitioner to an aggregate 50-year term of imprisonment, with 25 years of parole ineligibility.[1]

Petitioner appealed.  In an opinion filed July 24, 1998, the Appellate Division of the Superior

Court of New Jersey affirmed.  See State v. Lewis, No. A-3643-96T4 slip op. (N.J. Super., App.

Div., July 24, 1998).  On November 5, 1998, the Supreme Court of New Jersey denied

certification.  See State v. Lewis, 157 N.J. 542 (1998) (table).

On February 16, 1999, Petitioner filed a pro se verified petition for post-conviction relief

in the Law Division of the Superior Court of New Jersey, Monmouth County.  On May 6, 2002,

assigned counsel filed an amended petition.  Without conducting an evidentiary hearing, on

August 9, 2002, the Law Division entered an order denying post-conviction relief.  Petitioner

_____

[1] Under New Jersey law, a judge may sentence a persistent offender, see N.J. STAT. ANN.
§ 2C:44-3, who is convicted of a first degree crime to an extended term of 20 years to life
imprisonment, see N.J. STAT. ANN. § 2C:43-7(a)(2), and the presumptive sentence is 50 years in
prison, see N.J. STAT. ANN. § 2C:44-1(f)(1).

appealed.  On December 14, 2004, the Appellate Division of the Superior Court of New Jersey affirmed the order denying post-conviction relief.  See State v. Lewis, No. A-2907-02T4 slip op. (N.J. Super., App. Div., Dec. 14, 2004).  On March 16, 2005, the New Jersey Supreme Court denied certification.  State v. Lewis, 183 N.J. 216 (2005) (table).

Petitioner executed the Petition which is now before this Court on November 30, 2005. The Clerk received it on December 12, 2005.  The Court notified Petitioner of the consequences of filing such a Petition under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), and gave him an opportunity to withdraw the Petition and file one all-inclusive Petition, pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000).  Petitioner asked the Court to rule on the Petition as filed.

The Petition presents seven grounds:

> Ground One:  DEFENDANT WAS NOT PROPERLY APPRISED OF THE POTENTIAL SENTENCE PRIOR TO HIS REJECTION OF THE PLEA OFFER AND WAS THEREFORE UNABLE TO MAKE A KNOWING, INTELLIGENT DECISION TO PROCEED TO TRIAL.

> Ground Two:  DEFENDANT'S SIXTH AMENDMENT RIGHTS WERE VIOLATED BY THE DENIAL OF THE EFFECTIVE ASSISTANCE OF COUNSEL.  U.S. CONST. AMEND. VI.

> Ground Three:  THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION . . . WAS VIOLATED BY THE TRIAL COURT'S FAILURE TO INSTRUCT THE JURY ON THE LAW OF ACCOMPLICE WITNESS TESTIMONY.

> Ground Four:  THE TRIAL COURT ERRED IN ITS INSTRUCTION ON THE LAW TO THE JURY, THEREBY DEPRIVING THE DEFENDANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT

TO THE U.S. CONSTITUTION . . . :  THE TRIAL COURT
FAILED TO INSTRUCT THE JURY ON THE LESSER
INCLUDED OFFENSE OF ROBBERY IN THE SECOND
DEGREE.

Ground Five:  THE DEFENDANT'S RIGHT TO DUE PROCESS
OF LAW AS GUARANTEED BY THE FOURTEENTH
AMENDMENT TO THE U.S. CONSTITUTION . . . WAS
VIOLATED.

> A.  THE TRIAL COURT IMPROPERLY ADMITTED
> OTHER-CRIME EVIDENCE.
> B.  THE TRIAL COURT ERRED BY FAILING TO GIVE
> THE JURY A LIMITING INSTRUCTION ON THE
> PERMISSIBLE AND IMPERMISSIBLE USE OF THE
> OTHER-CRIME EVIDENCE.

Ground Six:  THE DEFENDANT'S RIGHT TO DUE PROCESS
OF LAW AS GUARANTEED BY THE FOURTEENTH
AMENDMENT TO THE U.S. CONSTITUTION . . . WAS
VIOLATED BY PROSECUTORIAL MISCONDUCT DURING
SUMMATION.

Ground Seven:  THE DEFENDANT'S SENTENCE IS
EXCESSIVE:  THE TRIAL COURT ERRED BY IMPOSING AN
EXTENDED FIFTY-YEAR TERM WITH A TWENTY-FIVE-
YEAR PAROLE INELIGIBIITY.

(Pet. ¶ 12; Petitioner's Brief, Legal Argument.)

The State filed an Answer seeking dismissal of the Petition as time barred and on the

merits, and Petitioner filed a Traverse.

## II.  DISCUSSION

A.  Statute of Limitations

Respondents argue that the Petition is untimely because "a total of 727 [days] have elapsed since the defendant was sentenced on August 30, 1996."  (State's Brief in Response to Pet. at p. 23.)  Respondents calculate this 727-day period as follows:

> The petitioner was sentenced on August 30, 1996, and on March 5, 1997, he appealed his conviction and sentence to the Appellate Division; 186 days had elapsed. On July 24, 1998, the Appellate Division affirmed the petitioner's conviction and sentence, and on August 26, 1998, he filed a petition for certification with the New Jersey Supreme Court; 33 days had elapsed. On November 5, 1998, petitioner was denied certification by the New Jersey Supreme Court, and on February 16, 1999, [2] he filed a pro se petition for postconviction relief; 103 days had elapsed. On August 9, 2002, the petition for post-conviction relief was denied, but the petitioner filed a motion for reconsideration on October 4, 2002, (56 days later) which was denied on December 16, 2002. The petitioner filed a notice of appeal to the Appellate Division on February 13, 2003; 59 days had elapsed. On December 14, 2004, the appeal was denied and the petitioner filed a petition for certification with the New Jersey Supreme Court on January 4, 2005; 20 days had elapsed. On March 16, 2005, the New Jersey Supreme Court denied certification and the petitioner filed for a writ of habeas corpus on December 12, 2005; 270 days had elapsed. Therefore, a total of 727 has elapsed since the defendant was sentenced on August 30, 1996.  He is, thus, barred from seeking habeas corpus relief.

(State's Brief in Response to Pet. at pp. 22-23.)

The AEDPA provides that "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court."  28 U.S.C. § 2244(d)(1).  The limitations period runs from the latest of

---

[2] The State submits that no action was taken on the pro se petition; however, for purposes of habeas corpus review, that filing date was used to give every benefit to the petitioner.

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence . . . .

28 U.S.C. § 2244(d)(1).

The statute of limitations under § 2244(d) is subject to two tolling exceptions:  statutory tolling and equitable tolling.  See Merritt v. Blaine, 326 F.3d 157, 161 (3d Cir. 2003); Miller v. N.J. State Dep't of Corr., 145 F.3d 616, 617-18 (3d Cir. 1998).  Section 2244(d)(2) requires statutory tolling under the following circumstances:  "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  28 U.S.C. § 2244(d)(2).  An application is "filed" when "it is delivered to, and accepted by, the appropriate court officer for placement into the official record."  Artuz v. Bennett, 531 U.S. 4, 8 (2000) (citations omitted).

And an application is *properly* filed" when its delivery and acceptance are in compliance with the applicable laws and rules governing filings.  These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee . . . .

6

> In some jurisdictions the filing requirements also include, for example, preconditions imposed on particular abusive filers, or on all filers generally . . . .  But in common usage, the question whether an application has been "properly filed" is quite separate from the question whether the claims *contained in the application* are meritorious and free of procedural bar.

Artuz, 531 U.S. at 8-9 (citations omitted).  A post-conviction relief application remains pending in state court until "the state courts have finally resolved an application for state post[-]conviction relief [but] § 2244(d)(2) does not toll the 1-year limitations period during the pendency of a petition for certiorari."  Lawrence v. Florida, __ U.S. __, 127 S. Ct. 1079, 1083 (2007).

In this case, the applicable limitations provision is § 2244(d)(1)(A).  Petitioner's conviction became final on February 4, 1999, when the Supreme Court of New Jersey denied certification on direct review on November 5, 1998, and the time to file a petition for certiorari in the United States Supreme Court expired.  See Lawrence, __ U.S. at __, 127 S. Ct. at 1083-84; Merritt, 326 F.3d at 161; Nara v. Frank, 264 F.3d 310, 315 (3d Cir. 2001); Burns v. Morton, 134 F.3d 109, 111 (3d Cir. 1998).  The limitations period began the next day, February 5, 1999, and ran for 11 days until February 16, 1999, the date Petitioner filed his pro se petition for post-conviction relief in the Law Division.[3]  See Lawrence, __ U.S. at __, 127 S. Ct. at 1082.  The limitations period was statutorily tolled from February 16, 1999, until  the Supreme Court of New Jersey denied Petitioner's petition for certification by order filed March 16, 2005.  Id. at 1083.  The limitations period picked up the next day, March 17, 2005.  Absent equitable tolling, Petitioner had 354 days, or until March 6, 2006, to hand his § 2254 petition to prison officials for

---

[3] Respondents concede that Petitioner filed his pro se state post-conviction relief petition on February 16, 1999.  (State's Brief at p. 22.)

7

mailing to the Clerk.  See Houston v. Lack, 487 U.S. 266 (1988).  Since Petitioner executed the

Petition on November 30, 2005, and the Clerk received it on December 12, 2005, the Petition is

timely.

Nevertheless, Respondents contend that the Petition is untimely.  Respondents argue that

the intervals between the dates of  the filing of a judgment and the dates of the filing of a notice

of appeal are included in the limitations period.  This argument is without merit.  The intervals

between the filing of the judgment of conviction and Petitioner's filing of his notice of appeal,

and between the Appellate Division's opinion on direct appeal and Petitioner's filing of a petition

for certification, do not count because the statute of limitations does not begin to run until "the

date on which the judgment became final by the conclusion of direct review or the expiration of

the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  In addition, the Supreme Court

held in Carey v. Saffold, 536 U.S. 214 (2002), that the statute of limitations continues to toll

pursuant to § 2244(d)(2) during the intervals between a defendant's receipt of a state court

decision on his post conviction relief petition and the filing of any appeal.  Because Petitioner

filed his § 2254 Petition before the statute of limitations expired, the Petition is timely.  Thus,

this Court will proceed to review the merits of the Petition.

B.  Standard of Review for Claims Adjudicated on Merits by State Courts

Section 2254(a) of Title 28 of the United States Code gives the court jurisdiction to

entertain a habeas petition challenging a state conviction or sentence only where the inmate's

custody violates federal law:

> [A] district court shall entertain an application for a writ of habeas
> corpus in behalf of a person in custody pursuant to the judgment of

> a State court only on the ground that he is in custody in violation of
> the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); 28 U.S.C. § 2254(a); accord Barry v. Bergen County Probation Dept., 128 F.3d 152, 159 (3d Cir. 1997). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Smith v. Phillips, 455 U.S. 209, 221 (1982). "If a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable." Engle v. Isaac, 456 U.S. 107, 120 n.19 (1982). Moreover, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." Bradshaw v. Richey, 546 U.S. 74, __, 126 S. Ct. 602, 604 (2005).

The AEDPA limits a federal court's authority to grant habeas relief when a state court has adjudicated Petitioner's federal claim on the merits. See 28 U.S.C. § 2254(d). Where a federal claim was "adjudicated on the merits" in state court proceedings, the writ must be denied unless adjudication of the claim either involved an unreasonable application of clearly established federal law, or was based on unreasonable determination of the facts in light of the evidence before the state court. See 28 U.S.C. § 2254(d). Specifically, § 2254(d) provides:

> (d) An application for a writ of habeas corpus . . . shall not be
> granted with respect to any claim that was adjudicated on the
> merits in State Court proceedings unless the adjudication of the
> claim -

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The unreasonableness standards of § 2254(d) govern only claims that were "adjudicated on the merits in State Court proceedings." 28 U.S.C. § 2254(d). "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004) (citations and internal quotation marks omitted), reversed on other grounds sub nom. Rompilla v. Beard, 545 U.S. 374 (2005); see also Rolan v. Vaughn, 445 F. 3d 671, 678 (3d Cir. 2006) ("Here, because the PCRA appellate court found that Vargas was not willing to testify at the guilt phase of Rolan's trial, its decision to deny habeas relief on that basis constituted an adjudication on the merits"). A state court may render an adjudication on the merits of a federal claim by rejecting the claim without any discussion whatsoever. See Rompilla, 355 F.3d at 247. On the other hand, "[i]f the petitioner's legal claims were presented but not addressed by the state courts, 28 U.S.C. § 2254(d) does not apply, and federal courts undertake a de novo review of the claim." Rolan, 445 F. 3d at 678.

As the New Jersey courts adjudicated all of Petitioner's claims on the merits, this Court may not grant relief unless either § 2254(d)(1) or § 2254(d)(2) is satisfied. See 28 U.S.C. § 2254(d). Accordingly, this Court may not grant habeas relief to Petitioner unless the adjudication

of a federal claim by the New Jersey courts involved an unreasonable application of clearly established Supreme Court law, see 28 U.S.C. § 2254(d)(1), or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding and Petitioner is in custody in violation of the Constitution or laws or treaties of the United States, see 28 U.S.C. § 2254(a), (d)(2).

C.  Claim Asserting Unreasonable Determination of Facts Under 28 U.S.C. § 2254(d)(2)

In Ground One, Petitioner contends he "was not properly apprised of the potential sentence prior to his rejection of the plea offer and was therefore unable to make a knowing, intelligent decision to proceed to trial." (Pet. ¶ 12.A.)  As factual support, Petitioner asserts that "Defendant was not told by anybody that he could receive a 50-years sentence for a crime with a max of 15-years, before refusing a plea offer of 15-years flat." (Id., Supporting Facts.)  Petitioner elaborates upon this claim in his Traverse, explaining that trial counsel was constitutionally ineffective in failing to advise him of his exposure to a 50-year extended sentence if he went to trial.  The Superior Court of New Jersey rejected Petitioner's claim based on its factual finding that Petitioner knew during plea negotiations that he was subject to an extended term as a persistent offender; thus, Petitioner was not prejudiced even if his attorney did not advise him of his exposure.

Under Supreme Court precedent, a defendant has the ultimate authority to make the fundamental decision as to whether to plead guilty or go to trial.  See Jones v. Barnes, 463 U.S. 745, 751 (1983).  Under Strickland v. Washington, 466 U.S. 668 (1984), defense counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691.  In Hill v. Lockhart, 474 U.S. 52

11

(1985), the Supreme Court determined that the two-part Strickland v. Washington standard governs a claim of ineffective assistance of counsel arising out of the plea process. Id. at 369-71. Under the Strickland standard, a  defendant must "show that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88.  "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. at 690.  The court must then determine whether, in light of all the circumstances at the time, the identified errors were so serious that they were outside the wide range of professionally competent assistance. Id.  Under Strickland, as modified by Hill v. Lockhart, the prejudice requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process.  In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

Under the above Supreme Court precedent, "a defendant has the right to make a reasonably informed decision whether to accept a plea offer," and "[k]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty." United States v. Day, 969 F.2d 39, 42, 43 (3d Cir. 1992).  Under these precedents, trial counsel's failure to inform petitioner of his exposure to a three-strikes or persistent offender statute falls below an objective standard of reasonableness. See Id. at 42-44; accord Baker v. Barbo, 177 F.3d 149 (3d Cir. 1999) ("we must hold that an attorney who does not know the basic sentence for an offense at the time that his client is contemplating entering a plea is ineffective").  A petitioner satisfies the prejudice prong under

Strickland and Hill where he shows that there is a reasonable probability that, but for counsel's failure to advise him of his sentencing exposure as a persistent offender, he would have pleaded guilty in exchange for a substantially lesser sentence.  See e.g., Riggs v. Fairman, 399 F.3d 1179 (9th Cir. 2005) (§ 2254 relief warranted because defense counsel's failure to learn that defendant was exposed to a potential 25-year-to-life sentence as a career offender fell below an objective standard of reasonableness and petitioner's testimony that he would have accepted a plea but for counsel's deficient performance, coupled with the significant discrepancy between the plea and petitioner's exposure, satisfies the prejudice prong); Magana v. Hofbauer, 263 F.3d 542 (6th Cir. 2001) (relief warranted under § 2254 where defense attorney's misadvice regarding potential sentencing exposure fell below objective standard of reasonableness and, but for counsel's erroneous advice, there is a reasonable probability that he would have accepted a plea); Mask v. McGinnis, 233 F.3d 132, 142 (2d Cir. 2000) (prejudice requirement is satisfied where defendant testifies to his willingness to accept a reasonable plea bargain and a great disparity existed between the sentence exposure at trial and in the plea bargain); United States v. Gordon, 156 F.3d 376, 380 (2d Cir. 1998) (whether the government had made a formal plea offer is  irrelevant to ineffective assistance claim because the petitioner was prejudiced because he did not have accurate information upon which to make his decision to pursue further plea negotiations or go to trial); Day, 969 F.2d 39.

Thus, if Petitioner's attorney did not advise him that he was eligible for a presumptive 50-year extended term as a persistent offender, and he was not otherwise aware of his exposure during plea negotiations, then Petitioner would have a colorable ineffective assistance of counsel claim.  However, the New Jersey courts rejected the claim on post-conviction relief based on the

13

factual finding, made without conducting an evidentiary hearing, that Petitioner knew that he was eligible for an extended term as a persistent offender.

Where a petitioner seeks habeas relief on the basis of an erroneous factual determination of the state court, two provisions of the AEDPA necessarily apply.  First, the AEDPA provides that "a determination of a factual issue made by a State court shall be presumed to be correct [and] [t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  29 U.S.C. § 2254(e)(1); see Miller-El v. Dretke, 545 U.S. 231, 240 (2005) (a district court must "presume the [state] court's factual findings to be sound unless [petitioner] rebuts the 'presumption of correctness by clear and convincing evidence.'").  Second, the AEDPA precludes habeas relief unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

(1) Was the Finding that Petitioner Knew His Sentencing Exposure of Life Imprisonment, with a Presumptive 50-Year Term, Entitled to a Presumption of Correctness under 28 U.S.C. § 2254(e)(1)?

Petitioner raised his ineffective assistance during plea negotiations claim before the Law Division of the Superior Court of New Jersey on post-conviction relief.  He filed his own affidavit dated August 2, 2002, asserting the following:

> I was represented on Indictment 1291-8-95 by James Butler . . . .  I accepted the legal advice that he gave me and the suggestions that he made about the defense of the matter encompassed in Indictment 1291-8-95.  He advised me that my maximum exposure was 20 years in a first degree robbery.  He never indicated to me that I was subject to an extended term which therefore left me with an exposure of life in prison.  In fact, the judge sentenced me to an extended term of 50 years in the New Jersey State Prison system.

14

> The plea offer in this matter was 15 years, 3 without parole.  Had I
> realized that my potential exposure was life in prison, I would have
> accepted the offer made to me.  In fact, Mr. Butler suggested that I
> reject the offer and take the case to trial since the risk was "only 5
> years."  I followed his advice and rejected the offer.  I now know
> that I was given legally incorrect information.

(Affidavit of Dennis Lewis, dated Aug. 2, 2002.)

On the return date of Petitioner's post-conviction relief application, Superior Court Judge

Michael D. Farren (the trial court) took no testimony.  Judge Farren heard the argument of

counsel and then postponed ruling on the claim pending review of the plea cutoff form:

> THE COURT: . . . [T]he last issue [is] an affidavit of Mr. Lewis,
> signed today, indicating that Mr. Butler, he says, "advised me that
> my maximum exposure was 20 years in a first degree robbery.  He
> never indicated to me that I was subject to an extended term, which
> therefore left me with an exposure of life in prison.  In fact, the
> Judge sentenced me to an extended term of 50 years in State
> Prison.  The plea offer in this matter was 15 years, three without
> parole.  Had I realized that my potential exposure was life in
> prison, I would have accepted the offer.  In fact, Mr. Butler
> suggested that I reject the offer and take the case to trial, since the
> risk was only five years."  It says, "I followed his advice and
> rejected the offer."
>
>   As to whether or not that is true, it's impossible for me to say
> right at this point.  As to whether or not there will be an evidentiary
> hearing with Mr. Butler testifying, I'm going to reserve on that and
> ask the Prosecutor if the Prosecutor could secure your file and pull
> out the plea cutoff.  I did check the rules, I didn't know whether or
> not the plea cutoff form was in effect at that time.  But I see the
> plea cutoff went into effect on January 1st of 1995 . . . .  So, it was
> in effect.  But I don't have the Court's file and you don't have your
> file.  But I think if we took a look at the plea cutoff form, perhaps
> that would assist me in making my decision as to whether or not
> there should be an evidentiary hearing with regard to this most
> recent affidavit to me . . .
>
>   With regard to this last issue that was given to us today, I don't
> know.  The Prosecutor's position is that it's time barred because it

15

> has never been mentioned heretofore.  But I know if I take the
> position of the Prosecutor's Office, and say it is time barred
> because it has never been raised before, that will go up on appeal,
> that that will come back down, it will be in my lap again.  So, I
> want to decide everything, so if it goes up on appeal the Appellate
> Division will have all the issues before them.  So, if you could find
> that.  I'm going to order that . . .  That's what we'll do next Friday .
> . . .  Well, at least I'll have the plea cutoff form.  If the plea cutoff
> form doesn't say anything about an extended term, then certainly
> we're going to have to have an evidentiary hearing . . . .  And if it
> does, then we'll know that Mr. Lewis was aware of the fact that he
> was extended term eligible.

State v. Lewis, Indictment No. 95-08-1291 transcript at pp. 19-23 (N.J. Super., Law Div., Aug. 2,

2002).

The following Friday, August 9, 2002, without taking testimony, Judge Farren rejected

the claim on the ground that Petitioner knew during plea negotiations that he was eligible for an

extended term because the plea cutoff form, which Judge Farren had located, indicated on its face

that the state's plea offer was for a 15-year term, with waiver of an extended sentence.  Although

Petitioner had not signed the plea cutoff form, Judge Farren found as a fact that Petitioner was

aware during plea negotiations that he was eligible for an extended term:

> THE COURT:  . . . [T]he only issue before the Court is the
> certification of Mr. Lewis, that Mr. Butler allegedly never told Mr.
> Lewis that he was subject to an extended term.  That's why I
> adjourned that particular issue until today, and I do have the plea
> cutoff form . . . .  And it states very plainly, the offer, the plea
> agreement is 15 flat, waive extended term.  The defendant did not
> want to accept that.  So, that would end all plea negotiations, and
> he would be given a trial date.  There are no pleas after a plea
> cutoff, unless there's a substantial change of circumstances.  And
> certainly, none  has been demonstrated.  The Court, in reviewing
> this plea cutoff form, is of the opinion that the defendant was
> aware that he was extended term eligible.  Otherwise, why would
> they put it in the plea cutoff form, waive extended term.  That just
> wouldn't make sense.  I find that he was aware of his extended

16

term eligibility.  He did not wish to accept the 15 flat.  As to whether or not there was a subsequent offer of 15 over three, I don't know.  There's no proof of that anywhere.  But he decided to roll the dice, didn't want to take the 15 flat.  And he came up on the short end, because the proofs involved in the case.  But I do find that he was in fact aware that he was extended term eligible.  So, accordingly an evidentiary hearing will be denied.  And this last issue raised with regard to his post conviction relief application is denied . . . .  This keeps showing up on my calendar as having whiskers.  That's why I really don't need a transcript to resolve this particular issue.  If you do order a transcript and it proves me incorrect, certainly we can revisit it by way of an application for reconsideration.

State v. Lewis, Indictment No. 95-08-1291 transcript at pp. 8-10 (N.J. Super., Law Div., Aug. 9, 2002).

Petitioner's counsel thereafter obtained the transcript of the pretrial conference involving the plea cutoff, which occurred on November 27, 1995, and sent a letter to Judge Farren seeking reconsideration.  On December 6, 2002, Judge Farren denied reconsideration as follows:

THE COURT: . . . I've reviewed [the transcript of November 27, 1995] and there is nothing in the transcript itself dealing with the plea cutoff.  Mr. Lewis claims he is not guilty of this.  He wants a trial, he wants a new attorney.  I indicated to him, if he wanted a new attorney, that's fine, I would give him a trial date.  But he would have to secure his own new attorney because he's only entitled to one public defender, and he was dissatisfied with Mr. Gleason's representations of him.  In his . . . affidavit, he says that the plea offer in this matter was 15 years, three without parole.  That's incorrect.  The offer in this case was a flat 15, not three without parole.  He says he was never advised that he was extended term eligible.  The form itself indicates that he was, that the Prosecutor's Office would waive extended term.  As to whether or not he read it and refused to sign it, or just refused to sign it, I don't know.  That does not appear in the record.  But it is in the plea cutoff form itself, that the Prosecutor's Office was offering 15 flat, waive extended term.  The defendant knew that he was extended term eligible, because I believe he was previously convicted in Middlesex County of the same offense, and received an extended

17

term . . . .  He entered a guilty plea to robbery on December 4th, 1985, and he was sentenced to a term of 12 years.  He must serve five years before being eligible for parole.  Judge Nicola, who sentenced him on that date indicated, "The Court finds and determines that the defendant qualifies for an extended term sentence pursuant to the code, and is sentenced to an extended term of imprisonment pursuant to NJSA 2C:43-7" . . .

Well, if he's extended term eligible in '85 or '86, he's certainly extended term eligible in 1995 for the same offense that he was charged with, robbery.  So, he was well aware of the fact that having previously been sentenced to an extended term for the same offense, obviously he's extended term eligible again.

I also note that I went through my file, and I note that back on November 3rd, either November 2nd or November 3rd of 1995, there was an application for a bail reduction by Dennis Lewis, represented by Frank Gleason.  At that time, I declined to reduce the bail.  And my notes indicated that he was on parole when this offense occurred, two other robbery convictions, his ties to the community were poor, and he's eligible for an extended term, a great flight risk and serious risk to the community.

Now, they are the reasons, I don't have a copy of the transcript, but what I normally do and I'm sure I did in this particular case, I review the papers, make notes as to whether I'm going to grant it or deny it, and the reasons for that.  And I read the reasons into the record.  So, the court notes indicates that on November 2nd of '95 or November 3rd of '95, he was present during his bail reduction application.  And at that time, I placed on the record that he was eligible for an extended term . . . .  he was well aware of the fact that he was extended term eligible, and that issue wasn't even raised in the Appellate Division [on direct appeal].  It wasn't raised until years later.  So, the Court does find that the defendant has not demonstrated any sufficient basis whatsoever for this Court to grant his application for post conviction relief or for even a hearing.  Thank you very much.

State v. Lewis, Indictment No. 95-08-1291 transcript at pp. 10-14 (N.J. Super., Law Div., Dec. 6, 2002).

The Appellate Division affirmed the Law Division's rejection of the claim as follows:

> Among other things, defendant alleged that at a pre-trial conference, he was not advised of his maximum sentence exposure when he rejected a plea offer and decided to go to trial. Defendant's affidavit alleges "[Butler] never indicated that I was subject to an extended term." However, we note that at the pre-trial conference, defendant was represented by Gleason. The State made a plea offer recommending the following sentence: "15 flat, waive extended term." Defendant rejected this offer. At the same time, defendant objected to being represented by Gleason. The judge entered a pre-trial memorandum (PTM), noting the State's plea offer and defendant's rejection of it. Defendant refused to sign the PTM.[4]
>
> The PCR judge, who also presided over the trial, rejected defendant's factual assertion that he was not advised of his extended term eligibility. The judge denied the PCR petition. Defendant moved for reconsideration. The judge denied the motion because he was certain that defendant was advised on the record at the pre-trial conference of his sentence exposure. Moreover, the PTM expressly indicated that defendant was extended term eligible. In addition, at the time of the pre-trial conference, defendant had already been sentenced to an extended term on a prior conviction. After a jury convicted defendant, he was sentenced to an extended term . . . .
>
> Defendant argues that the trial judge had an independent duty, to advise him of his extended term eligibility. Defendant relies on State v. Cartier, 210 N.J. Super. 379, 381-82 (App. Div. 1986) and State v. Kovac, 91 N.J. 476 (1982). However, Cartier and Kovac are distinguishable. These cases involved defendants who plead[ed] guilty and were sentenced to extended terms. Here, defendant was sentenced on a conviction following a trial . . . . In any event, the record in this case reveals defendant was so informed. Therefore, defendant's argument fails.

State v. Lewis, Docket No. A-2907-02T4 slip op. at 3-4, 6 (N.J. Super., App. Div., Dec. 14, 2004).

---

[4] Presumably, the pre-trial memorandum referred to by the Appellate Division is the same document which Judge Farren calls the "plea cutoff form."

The Appellate Division affirmed the Law Division's factual finding that Petitioner knew during plea negotiations that he was subject to an extended term as a persistent offender if he went to trial.  Under § 2254(e)(1), this Court must defer to the New Jersey courts' factual determination that Petitioner knew during plea negotiations that he was eligible for an extended term as a persistent offender.  See 28 U.S.C. § 2254(e)(1); Nara v. Frank, ___ F. 3d ___, 2007 WL 1321929 *11, 12 (3d Cir. May 8, 2007) ("the § 2254(e)(1) presumption of correctness applies regardless of whether there has been an 'adjudication on the merits' for purposes of § 2254(d)," and "a state court's factual determination may be given effect even if its order has been rendered a nullity on other grounds"); Rolan v. Vaughn, 445 F. 3d 671, 678-681 (3d Cir. 2006) (holding that district court erred by failing to defer under § 2254(e)(1) to PCRA appellate court's factual determination that exculpatory witness, whom trial attorney failed to investigate, was not willing to testify at trial because, unlike prior law, AEDPA does not require the state court to hold an evidentiary hearing or comply with any prerequisites to deference).  Thus, under § 2254(e)(1), Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  See 28 U.S.C. § 2254(e)(1); Rolan, 445 F. 3d at 678-81.

(2) Was the State Courts' Factual Finding Unreasonable?

After concluding that there are state court findings of fact to which it must defer under 28 U.S.C. § 2254(e)(1), a "District Court should [] review[] those findings to ascertain whether or not they were reasonable" under 28 U.S.C. § 2254(d)(2).  Rolan, 445 F. 3d at 681.  As previously stated, the AEDPA provides that a habeas petition "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was based on an unreasonable determination of the facts in light of

the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme

Court has explained that a state court factual determination is not unreasonable in light of the

evidence presented in the state court under § 2254(d)(2) where "[r]easonable minds reviewing

the record might disagree" on the factual finding. Rice v. Collins, 546 U.S. 333, __, 126 S. Ct.

969, 976 (2006). The United States Court of Appeals for the Third Circuit held in Rolan v.

Vaughn that the Pennsylvania court's finding that an exculpatory witness was not willing to

testify on behalf of Rolan was objectively unreasonable under § 2254(d)(2) "because it was not

supported by the record" before the Pennsylvania court. Rolan, 445 F. 3d at 681.

This Court's reading of the record before the New Jersey courts indicates that the

Superior Court's finding that Petitioner was aware during plea negotiations that he was eligible

for a presumptive 50-year sentence was objectively unreasonable under § 2254(d)(2) because it

was not supported by the evidence before the New Jersey courts. Although the Law Division

took no testimony and did not conduct an evidentiary hearing, the Appellate Division concluded

that Petitioner was aware of his eligibility based on the findings of the Law Division. The Law

Division judge, Judge Farren, who was also the trial judge, rejected Petitioner's ineffective

assistance claim based on the following: (1) the face of the plea cutoff form referred to waiver of

extended term; (2) Petitioner rejected the Prosecutor's offer to waive the extended term in

exchange for a guilty plea and a 15-year term; (3) Petitioner received an extended term of 12

years on December 4, 1985, and if he was extended-term-eligible in 1985 then he had to know

that he was extended-term-eligible in 1995 for the same offense; and (4) the trial judge's notes

indicated that Petitioner was present on November 2 or 3, 1995, when the judge denied

Petitioner's motion for bail reduction, in part, on the ground that Petitioner was eligible for an extended term.

Judge Farren initially denied Petitioner's ineffective assistance claim without an evidentiary hearing based on a finding that Petitioner knew he was eligible for a presumptive 50-year sentence, regardless of what counsel told him, because (1) the plea cutoff form referred to waiver of extended term, and (2) Petitioner rejected a plea offer consisting of 15 years in prison and waiver of an extended term.  Specifically, Judge Farren initially denied Petitioner's ineffective assistance of counsel claim as follows:

> I do have the plea cutoff form . . . .  And it states very plainly, the offer, the plea agreement is 15 flat, waive extended term.  The defendant did not want to accept that.  So, that would end all plea negotiations, and he would be given a trial date.  There are no pleas after a plea cutoff, unless there's a substantial change of circumstances.  And certainly, none  has been demonstrated.  The Court, in reviewing this plea cutoff form, is of the opinion that the defendant was aware that he was extended term eligible.  Otherwise, why would they put it in the plea cutoff form, waive extended term.  That just wouldn't make sense.  I find that he was aware of his extended term eligibility.  He did not wish to accept the 15 flat.  As to whether or not there was a subsequent offer of 15 over three, I don't know.  There's no proof of that anywhere.  But he decided to roll the dice, didn't want to take the 15 flat.  And he came up on the short end, because the proofs involved in the case.  But I do find that he was in fact aware that he was extended term eligible.  So, accordingly an evidentiary hearing will be denied.

State v. Lewis, Indictment No. 95-08-1291 transcript at pp. 8-10 (N.J. Super., Law Div., Aug. 9, 2002).

Petitioner filed a motion for reconsideration.  On December 6, 2002, after reviewing the transcript of the plea cutoff hearing of  November 27, 1995, Judge Farren denied Petitioner's motion for reconsideration.  In doing so, Judge Farren again referred to the plea cutoff form, but

22

found additional reasons to reject the claim after noting that Petitioner had not signed the plea

cutoff form and that the transcript of the plea cutoff hearing showed that nothing was said on the

record at that time regarding Petitioner's eligibility for an extended term:

> THE COURT: . . . I've reviewed [the transcript of November 27, 1995] and there is nothing in the transcript itself dealing with the plea cutoff . . . .  In his . . . affidavit, he says that the plea offer in this matter was 15 years, three without parole.  That's incorrect.  The offer in this case was a flat 15, not three without parole.  He says he was never advised that he was extended term eligible.  The form itself indicates that he was, that the Prosecutor's Office would waive extended term.  As to whether or not he read it and refused to sign it, or just refused to sign it, I don't know.  That does not appear in the record.  But it is in the plea cutoff form itself, that the Prosecutor's Office was offering 15 flat, waive extended term.  The defendant knew that he was extended term eligible, because I believe he was previously convicted in Middlesex County of the same offense, and received an extended term . . . .  He entered a guilty plea to robbery on December 4th, 1985, and he was sentenced to a term of 12 years.  He must serve five years before being eligible for parole.  Judge Nicola, who sentenced him on that date indicated, "The Court finds and determines that the defendant qualifies for an extended term sentence pursuant to the code, and is sentenced to an extended term of imprisonment pursuant to NJSA 2C:43-7" . . .
>
> Well, if he's extended term eligible in '85 or '86, he's certainly extended term eligible in 1995 for the same offense that he was charged with, robbery.  So, he was well aware of the fact that having previously been sentenced to an extended term for the same offense, obviously he's extended term eligible again.

State v. Lewis, Indictment No. 95-08-1291 transcript at pp. 10-14 (N.J. Super., Law Div., Dec. 6,

2002).

The transcript shows that Judge Farren was aware that Petitioner had not signed the plea

cutoff form, and that nothing was mentioned about the extended term in the transcript of the plea

cutoff hearing.  Judge Farren was also aware of Petitioner's sworn statements in his affidavit that

the plea offer was for 15 years flat, with three years of parole ineligibility, that Petitioner's attorney had advised him that his maximum exposure was 20 years, and that Petitioner was not aware of his potential exposure to a life sentence, with a presumptive 50-year term. Nevertheless, Judge Farren rejected the facts set forth in Petitioner's affidavit based on the plea cutoff form, even though nothing in the record supported a finding that Petitioner ever saw the plea cutoff form, or otherwise knew of a plea offer waiving an extended term.  Accordingly, his finding that Petitioner was aware from the plea offer itself, as well as the plea cutoff form, of his eligibility for a life sentence, with a presumptive sentence of 50 years, is not reasonably supported by the evidence before the court.

However, Judge Farren attempted to bolster his factual finding by referring to Petitioner's December 4, 1985, sentence of 12 years, with five years of parole ineligibility, and the sentencing court's determination at that time that Petitioner qualified for a 12-year extended term under N.J. STAT. ANN. § 2C:43-7.  In denying Petitioner's motion for reconsideration of the denial of post-conviction relief without an evidentiary hearing, Judge Farren reasoned that, because Petitioner knew he was eligible in 1985 for a 12-year extended term, Petitioner had to know in 1995 that he was eligible for a life sentence and a presumptive 50-year extended term if convicted of first degree robbery.  However, I find that this assumption does not support a finding that Petitioner knew in 1995 that he could be sentenced to life imprisonment and a presumptive 50-year term for first degree robbery as a persistent offender.  All the prior sentence shows is that Petitioner possibly knew he could be sentenced to an extended term of 12 years for robbery.  This 12-year extended term for robbery did not in and of itself alert Petitioner that he was eligible in 1995 to receive a life sentence, with a presumptive 50-year sentence, particularly since it was 10 years

later and Petitioner alleged that his attorney told him that his maximum exposure was 20 years. Thus, the record of Petitioner's 12-year extended term in 1985 provides no support for Judge Farren's finding that Petitioner knew that he could receive a life sentence, with a presumptive 50-year sentence and 25 years of parole ineligibility, if he were convicted of first degree robbery in 1995.

Finally, in denying reconsideration, Judge Farren supported his finding that Petitioner knew that he was eligible for a presumptive 50-year extended sentence with the judge's personal notes concerning a bail reduction motion which, according to Judge Farren's notes, was heard on either November 2nd or November 3rd of 1995. In denying reconsideration, Judge Farren stated that, according to his own notes, Petitioner was present during his bail reduction application and Judge Farren had denied the bail reduction, in part, on the ground that Petitioner was a flight risk because he was eligible for an extended term.

A judge's personal notes are not part of the record and do not constitute "evidence presented in the State court proceeding" under 28 U.S.C. § 2254(d)(2). Nevertheless, this Court has reviewed the transcript of the bail reduction hearing, which occurred before Judge Farren on November 2, 1995. The transcript shows that, in denying the bail reduction motion, Judge Farren noted that Petitioner was eligible for an extended term of 40 years, with 20 years of parole ineligibility. In reality, Petitioner was eligible for a life sentence and a presumptive sentence of 50-years, with 25 years of parole ineligibility. See N.J. STAT. ANN. §§ 2C:43-7(a)(2), 2C:44-1(f)(1), 2C:44-3. Moreover, the transcript does not indicate that Petitioner was present at the bail reduction hearing on November 2, 1995. Because the judge's personal notes are not evidence and the transcript does not show that Petitioner was present at the bail reduction hearing, the

transcript of the bail reduction hearing does not reasonably support the finding that Petitioner

knew that he was eligible to receive a life sentence and presumptive 50-year sentence, with 25

years of parole ineligibility, if convicted.

The record before the New Jersey courts shows that the sole evidence on the issue of

whether Petitioner knew that he was eligible to receive a life sentence and a presumptive 50-year

sentence, with 25 years of parole ineligibility, as a persistent offender, was Petitioner's affidavit

in which he averred that he did not know, that his attorney told him that the maximum sentence

he could receive was 20 years, and that the state's plea offer was 15 years, with three years of

parole ineligibility.  The Superior Court's finding of fact that Petitioner knew that he was eligible

to receive a presumptive 50-year extended sentence is not reasonably supported by the evidence

presented in the state court proceedings.  Because Petitioner's affidavit establishes that he did not

know that he faced a presumptive 50-year sentence, and there was no evidence before the state

courts showing that Petitioner had such knowledge, or that his attorney had advised him of his

sentencing exposure, it was unreasonable under 28 U.S.C. § 2254(d)(2) for the New Jersey courts

to find that Petitioner possessed this knowledge during plea negotiations.

(3) Does the State Court Record Show that Petitioner Rebutted the Presumption of
Correctness under 28 U.S.C. § 2254(e)(1)?

Although there was no evidence before the New Jersey courts disputing Petitioner's

affidavit, and this Court is not bound by the unreasonable factual finding that led the New Jersey

courts to determine that Petitioner was not prejudiced by counsel's failure to advise him of his

sentencing exposure, this Court cannot find as a fact that Petitioner was not advised of his

sentencing exposure, unless Petitioner rebuts the presumption of correctness by "clear and

convincing evidence" under 28 U.S.C. § 2254(e)(1).  This Court finds that Petitioner's affidavit does not rebut the presumption of correctness by clear and convincing evidence.  Significantly, the affidavit refers to legal advice Petitioner received from James Butler, but James Butler did not represent Petitioner until after the plea cutoff date.  The record shows that Frank Gleason represented Petitioner during plea negotiations.  Because the affidavit of Petitioner does not rebut the presumption of correctness by clear and convincing evidence, this Court must determine whether to give Petitioner an opportunity to rebut the presumption of correctness at an evidentiary hearing.[5]

(4) Does 28 U.S.C. § 2254(e)(2) bar an evidentiary hearing?

Section 2254(e)(2) bars an evidentiary hearing where petitioner "has failed to develop the factual basis of a claim in State court proceedings," absent limited exceptions.  28 U.S.C. § 2254(e)(2).  The first inquiry is "whether the factual basis was indeed developed in state court, a question susceptible, in the normal course, of a simple yes or no answer."  Thomas v. Varner, 428 F.3d 491, 498 (3d Cir. 2005) (quoting Williams v. Taylor, 529 U.S. 420, 431 (2000)).  If the answer is no, then a court must determine if this is due to Petitioner's failure.  "In its customary and preferred sense, 'fail' connotes some omission, fault, or negligence on the part of the person who has failed to do something," "a person is not at fault when his diligent efforts to perform an act are thwarted, for example, by the conduct of another or by happenstance."  Williams, 529 U.S. at 431-32.  Thus, "[u]nder the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault,

--------------------------------------------------------

[5] "If the petition is not dismissed, the judge must review the answer, any transcripts and records of state-court proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted."  28 U.S.C. § 2254 Rule 8(a).

attributable to the prisoner or the prisoner's counsel."  Id. at 432.  "Diligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law."  Id. at 437.

In this case, the New Jersey courts rejected Petitioner's ineffective assistance claim without hearing defense counsel's testimony or conducting an evidentiary hearing.  However, development of the factual basis for an ineffective assistance of counsel claim generally requires the testimony of counsel.  See Thomas v. Varner, 428 F. 3d 491, 498 (3d Cir. 2005); see also Marshall v. Hendricks, 307 F. 3d 36, 115 (3d Cir. 2002) ("We conclude that *Strickland* requires an analysis based on a complete record.  The reviewing court's reasoning under the first prong needs to be made with an understanding of counsel's thought process, . . . so that a conclusion whether counsel was ineffective can be made based on facts of record, rather than on assumptions").  Thus, this Court finds that the factual basis of Petitioner's ineffective assistance of counsel claim was not developed in the New Jersey courts.

Nevertheless, § 2254(e)(2) does not bar an evidentiary hearing in this case because Petitioner was diligent in attempting to develop the facts supporting his claim of ineffective assistance of counsel before the New Jersey courts.  Specifically, it is clear from the record that Petitioner filed his own affidavit and requested an evidentiary hearing on the issue.  Therefore, Petitioner is not at fault for failing to develop the factual basis for his ineffective assistance of counsel claim, and § 2254 permits this Court to order an evidentiary hearing.  See Thomas, 428 F. 3d at 498; Campbell v. Vaughn, 209 F.3d 280, 287 (3d Cir. 2000).

(5) Is an Evidentiary Hearing Warranted?

In determining whether to order an evidentiary hearing, "courts focus on whether a new evidentiary hearing would be meaningful, in that a new hearing would have the potential to advance the petitioner's claim." Campbell, 209 F. 3d at 287.  In this case, an evidentiary hearing would have the potential to allow Petitioner to rebut the presumption of correctness by clear and convincing evidence and to therefore advance Petitioner's ineffective assistance of counsel claim. Plaintiff asserts that his counsel told him that, if he went to trial and were convicted, his maximum sentence would be 20 years, with five years of parole ineligibility, when in reality, his maximum exposure as a persistent offender was a life sentence and a presumptive 50-year sentence, with a 25-year period of parole ineligibility.  See N.J. Stat. Ann. §§ 2C:43-7(a)(2), 2C:44-1(f)(1), 2C:44-3.  Petitioner avers that, had counsel provided accurate advice in regard to sentencing exposure, he would have pursued plea negotiations and accepted a 15-year sentence, with three years of parole ineligibility.  This Court finds that Petitioner presents a colorable ineffective assistance of counsel claim and will order an evidentiary hearing to give Petitioner an opportunity to prove by clear and convincing evidence that his trial counsel's failure to advise him of his exposure under the persistent offender law was constitutionally deficient,[6] and to show

---

[6] Petitioner, having placed at issue conversations he had with counsel regarding plea negotiations, and whether counsel informed him of his eligibility for an extended sentence and what that extended sentence might be, has waived his attorney-client privilege as to relevant discussions with counsel, and this Court expects to hear testimony from counsel at the evidentiary hearing.

a reasonable probability that he would have pursued and/or accepted a plea offer to a substantially lesser sentence, but for counsel's advice.[7]

Habeas Rule 8(c) requires the appointment of an attorney to represent a petitioner who is financially eligible for appointment of counsel under 18 U.S.C. § 3006A(a)(2)(B) when the Court determines that an evidentiary hearing is warranted.  See 28 U.S.C. § 2254 Rule 8(c); United States v. Iasiello, 166 F.3d 212 (3d Cir. 1999).  Petitioner's affidavit of poverty indicates his financial qualification under 18 U.S.C. § 3006A(a)(2)(B).  The Court will accordingly appoint the Federal Public Defender to represent Petitioner.

D.  Claims Asserting Unreasonable Application of Federal Law Under 28 U.S.C. § 2254(d)(1)

Grounds Two, Three, Four, Five, Six and Seven are governed by 28 U.S.C. § 2254(d)(1), which prohibits a district court from granting habeas relief with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

_____

[7] As sections 2254(d)(1) and (d)(2) are in the disjunctive, a petitioner who satisfies §§ 2254(d)(2) and 2254(e)(1) need not also satisfy the unreasonable application clause of § 2254(d)(1), but need show only that he is in custody in violation of the Constitution, laws or treaties of the United States, see 28 U.S.C. § 2254(a).  See Rice v. Collins, 546 U.S. 333, __, 126 S. Ct. 969, 976 (2006) ("The question whether a state court errs in determining the facts is a different question from whether it errs in applying the law"); Miller-El v. Dretke, 545 U.S. at 240, 266 ("The state court's conclusion that the prosecutors' [peremptory] strikes of Fields and Warren were not racially determined is shown up as wrong to a clear and convincing degree; the state court's conclusion was unreasonable as well as erroneous.  The judgment of the Court of Appeals is reversed, and the case is remanded for entry of judgment for petitioner together with orders of appropriate relief"); Rolan v. Vaughn, 445 F. 3d 671, 681 (3d Cir. 2006) ("Because we are not bound by the unreasonable factual finding that led the Superior Court to determine that Rolan was not prejudiced . . . , we can proceed with the review of whether Goldstein was ineffective in his representation of Rolan").

A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court.  See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004).  Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision."  Williams, 529 U.S. at 412.   A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."  Lockyer v. Andrade, 538 U.S. 63, 71, 72 (2003).

A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result."  Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Williams, 529 U.S. at 413.  Whether a state court's application of federal law is "unreasonable" must be judged objectively; an application may be incorrect, but still not unreasonable.[8]  Id. at 409-10.  "The unreasonable application test is an objective one - a federal court may not grant habeas relief merely because it concludes that the state court applied federal law erroneously or incorrectly."  Thomas v. Varner, 428 F. 3d 491, 497 (3d Cir. 2005) (quoting Jacobs v. Horn, 395 F. 3d 92, 100 (3d Cir. 2005)).

---

[8] "[D]ecisions of federal courts below the level of the United States Supreme Court may be helpful to [a court] in ascertaining the reasonableness of state courts' application of clearly established United States Supreme Court precedent, as well as helpful amplifications of that precedent."  Marshall v. Hendricks, 307 F.3d 36, 71 n.24 (3d Cir. 2002) (citations and internal quotation marks omitted).

(1) Ineffective Assistance of Post-Conviction Counsel

In Ground Two, Petitioner claims that he was denied the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments.  As factual support, he asserts that "Defendant's direct appeal and PCR counselors failed to do several 'things' that should have been done on behalf of defendant, for them to have been effective assistance of counsel, which are all listed on page 27 of defendant's brief."  (Pet. ¶ 12.B., Supporting Facts.)  On page 27 of his Brief, Petitioner references Ground One for his ineffective assistance of trial counsel claim; he itemizes in detail the alleged deficiencies in the performance of post-conviction relief counsel. (Petitioner's Brief in Support of Pet. at p. 27.)

Petitioner's factual support in Ground Two relates solely to the deficient performance of post-conviction relief counsel.  However, the alleged ineffectiveness of counsel on post-conviction relief is not cognizable under § 2254.  Section 2254(i) provides:  "The ineffectiveness or incompetence of counsel during Federal or  State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."  28 U.S.C. § 2254(i). Because Ground Two concerns only the ineffectiveness of post-conviction relief counsel, a claim that is not cognizable under § 2254, Petitioner is not entitled to habeas relief on Ground Two.

(2)  Instructions

In Grounds Three and Four, Petitioner challenges the jury instructions on due process grounds.  In Ground Three, Petitioner asserts that the failure to instruct the jury on the law of accomplice witness testimony violated due process.  In Ground Four, Petitioner asserts that the failure to instruct the jury on the lesser included offense of second degree robbery violated due process.  The government argues that these grounds involve state law and do not implicate the

32

Constitution and, to the extent that they raise constitutional claims, due process does not require the claimed instructions.

A habeas petitioner who challenges state jury instructions must "point to a federal requirement that jury instructions on the elements of an offense . . . must include particular provisions," or demonstrate that the jury "instructions deprived him of a defense which federal law provided to him."  Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997).  This is because district courts do not "sit as super state supreme courts for the purpose of determining whether jury instructions were correct under state law with respect to the elements of an offense and defenses to it."  Id.  As the Third Circuit explained,

> In considering whether this case involves a claim of error under the Constitution, laws, or treaties of the United States, it is critical to remember that the Supreme Court has made it clear that the states define the elements of state offenses. Accordingly, while there may be constitutionally required minimum criteria which must be met for conduct to constitute a state criminal offense, in general there is no constitutional reason why a state offense must include particular elements. *See McMillan v. Pennsylvania,* 477 U.S. 79, 84-86, 106 S.Ct. 2411, 2415-16, 91 L.Ed.2d 67 (1986).

> It thus follows that for the error of state law in the justification instructions, assuming that there was an error, to be meaningful in this federal habeas corpus action, there would have to be a body of federal law justifying the use of deadly force which is applicable in a state criminal action charging an offense based on the defendant's use of that force. Then the error in the jury instructions would be significant if the instructions did not satisfy that body of law. Put in a different way, the jury instructions on justification, even if correct under state law, would need to have relieved the state of the necessity of proving an element of the offense as required by federal law or to have deprived the petitioner of a defense the state had to afford him under federal law in order to be significant in a federal habeas corpus action. If we concluded that a petitioner could obtain habeas corpus relief without making such a showing, then district courts in habeas corpus cases would sit as super state

33

> supreme courts for the purpose of determining whether jury
> instructions were correct understate law with respect to the
> elements of an offense and defenses to it.

Johnson, 117 F.3d at 110.

Petitioner is not entitled to habeas relief on Ground Three or Four because he does not

point to a federal requirement that jury instructions must include the requested provisions, nor

does he show that the absence of these instructions deprived him of a defense which federal law

provided to him.  See Johnson, 117 F.3d at 111.  And "the fact that the instruction was allegedly

incorrect under state law is not a basis for habeas relief."  Estelle, 502 U.S. at 71-72; see also

Engle v. Isaac, 456 U.S. 107, 119 (1982) ("Insofar as respondents simply challenge the

correctness of the self-defense instructions under Ohio law, they allege no deprivation of federal

rights and may not obtain habeas relief").  Moreover, Petitioner cites no Supreme Court authority

for the proposition that the jury instructions violated a clearly established federal right, as

determined by the Supreme Court.  He is therefore not entitled to habeas relief on Ground Three

or Four.

(3)  Admission of Evidence

In Ground Five, Petitioner asserts that the trial court violated due process by admitting

testimony that Petitioner had purchased and possessed illegal drugs after the robbery, without

instructing the jury concerning the limited scope and purpose of the evidence.  However, the

admissibility of evidence is a question of state law which is not cognizable under habeas review.

See Estelle, 502 U.S. at 68 (incorrect admission of evidence under state law does not violate due

process); Keller v. Larkins, 251 F.3d 408, 416 n.2 (3d Cir. 2001) ("A federal habeas court,

however, cannot decide whether the evidence in question was properly allowed under the state

34

law of evidence"); Hickey v. Jeffes, 571 F.2d 762, 766 (3d Cir. 1978) ("As to the contention that the trial court erred in admitting the victim's testimony of a prior flirtatious conversation, we find that, if there was any error in the court's ruling . . . that error was at best one of interpretation of the state's law of evidence and did not arise to constitutional dimensions").  Because the admission and use of the evidence is a question of state law, this Court lacks jurisdiction over Ground Five, and Petitioner is not entitled to habeas relief on this ground.

(4) Excessive Sentence

In Ground Seven, Petitioner asserts that his "sentence is excessive:  the trial court erred by imposing an extended fifty-year term with a twenty-five year parole ineligibility."  (Pet. ¶ 12.G.)  As factual support, Petitioner asserts:  "1.  the trial judge did not state on record his reasons for giving defendant an Extended term.  And 2.  the trial judge gave defendant the Extended term upon (one) aggravating factor.  Defendant's prior crime record."  (Id., Supporting Facts.)   The problem with Petitioner's excessive sentence claim is that, absent a claim that the sentence constitutes cruel and unusual punishment prohibited by the Eighth Amendment or that it is arbitrary or otherwise in violation of due process, the legality of a sentence is a question of state law.  See Chapman v. United States, 500 U.S. 453, 465 (1991); Gryger v. Burke, 334 U.S. 728, 731 (1948); Jones v. Superintendent of Rahway State Prison, 725 F.2d 40, 42-43 (3d Cir. 1984).[9]  "[A] person who has been so convicted is eligible for, and the court may impose,

_____

[9] In Gryger v. Burke, 334 U.S. 728, 731 (1948), the Supreme Court rejected petitioner's due process challenge to a life sentence imposed by the Pennsylvania courts.  Petitioner argued that the sentencing judge mistakenly regarded as mandatory a sentence which was discretionary. The Supreme Court held:

We are not at liberty to conjecture that the trial court acted under

(continued...)

whatever punishment is authorized by statute for his offense, so long as that penalty is not cruel and unusual . . . and so long as the penalty is not based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment." <u>Chapman</u>, 500 U.S. at 465 (citations omitted).  Because the excessive sentence ground does not assert a federal constitutional claim, this Court lacks subject matter jurisdiction over Ground Seven and Petitioner is not entitled to habeas relief on this ground.

(5) Prosecutorial Misconduct

In Ground Six, Petitioner argues that the prosecutor's comments made during summation violated due process.  Specifically, in support of this claim he asserts:

> [T]he prosecutor improperly argued to the jury that the victim retracted his allegation that the defendant was his accomplice because of "fear."  (3T 49-3 to 9).  The only conclusion the jury could have reached from this argument was that the defendant was a violent person capable of extracting revenge by inflicting bodily injury.  The argument was extraordinarily prejudicial. Furthermore, the prosecutor improperly characterized the defendant as a "really bad guy."  (3T 51-4 to 5).

(Petitioner's Brief in Support of Pet. at p. 42.)

Prosecutorial misconduct may "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process."  <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643 (1974).  Where "specific guarantees of the Bill of Rights are involved, [the Supreme] Court has

---

9(...continued)
an interpretation of the state law different from that which we might adopt and then set up our own  interpretation as a basis for declaring that due process has been denied.  We cannot treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would come here as a federal constitutional question.

taken special care to assure that prosecutorial misconduct in no way impermissibly infringes them." Id. at 642.  The quantum or weight of the evidence is crucial to determining whether the prosecutor's statements before the jury were so prejudicial as to result in a denial of due process. Darden v. Wainwright, 477 U.S. 168, 182 (1986); Donnelly, 416 U.S. at 644; Moore v. Morton, 355 F.3d 95, 111 (3d Cir. 2001).

In this case, the Appellate Division considered Petitioner's claims on direct appeal that the prosecutor improperly called Petitioner a "really bad guy" and improperly suggested to the jury a propensity on Petitioner's part to retaliate against his accomplice for testifying against Petitioner.  The Appellate Division rejected both claims, concluding "that both remarks were reasonably drawn from the evidence at trial and were therefore fair comment . . ." State v. Lewis, Docket No. A-3643-96T4 slip op. at 8 (N.J. Super., App. Div., July 24, 1998).

The prosecutor's comments did not implicate specific guarantees in the Bill of Rights. The Appellate Division's rejection of Petitioner's prosecutorial misconduct claims did not result in a decision that was contrary to, or involved an unreasonable application of, Donnelly and its progeny, and Petitioner is not entitled to habeas relief on Ground Six.

### III.  CONCLUSION

Based on the foregoing, the Court grants an evidentiary hearing on Ground One, appoints the Federal Public Defender to represent Petitioner, and denies relief on the remaining grounds.


 s/Freda L. Wolfson
**FREDA L. WOLFSON, U.S.D.J.**


DATED:   May 11, 2007

37